# APPENDIX E

MAYFLOWER
TRANSIT

Mayflower Transit, LLC
One Mayflower Drive
Fenton, MO 63026-1350



VIA FACSIMILE 212-336-2222
CONFIRMED BY U.S. MAIL

October 29, 2004

Mr. Anthony P. Coles, Esq.
Patterson, Belknap et al
1133 Avenue of the Americas
New York, NY 10036-6710

    Re:    **Mayflower Transit, LLC Order No.: 333-6472-4**
          **Your Clients:    Jeffery and Nancy Goldstein**

Dear Mr. Coles:

This will acknowledge receipt of your October 5, 2004 letter addressed to Mr. Joe Moholland of Joe Moholland Moving "(Moholland") with regard to your clients' interstate household goods shipment under the above-referenced Mayflower Transit, LLC ("Mayflower") Order Number. Your letter has been forwarded to my attention for review and response.

Moholland is a disclosed household goods agent of Mayflower for purposes of providing interstate household goods transportation services, and as such, has no liability separate from Mayflower for interstate cargo loss and damage claims. See 49 U.S.C. §13907 and Nichols v. Mayflower Transit, LLC 2003 WL 21981994 (D.Nev. 2003). Accordingly, please forward all future correspondence regarding cargo loss or damage to my attention.

My analysis your October 5, 2004 letter is focused on three basic legal issues. These issues are:
    (1) Your clients have alleged damage to multiple items in their shipment and to their Washington D.C. and New York residences as a result of their interstate shipment with Mayflower; and
    (2) Your clients demand a refund of their transportation charges associated with their move despite the fact that they have not paid any of the transportation charges to date; and
    (3) Whether your clients have filed a proper claim for cargo loss or damage in compliance with applicable federal regulations.

The following will provide you with information about the applicable federal law governing an interstate shipping transaction, such as the one involved here, along with Mayflower's response to your October 5th letter.

## MAYFLOWER'S LIABILITY FOR CARGO LOSS OR DAMAGE IS EXCLUSIVELY GOVERNED BY THE CARMACK AMENDMENT

As your clients' shipment moved in interstate commerce, Mayflower's liability is exclusively governed by federal law and subject to federal jurisdiction. See 49 U.S.C. § 14706 (formerly 11707). Specifically, the Carmack Amendment to the Interstate Commerce Act ("Carmack") exclusively governs an interstate motor carrier's liability for loss, damage or delay to goods moving through interstate commerce. Carmack preempts any and all state or common law remedies for recovery of loss, damage or delay to an interstate shipment. See Adams Express Co. V. Croninger, 226 U.S. 491, 505 (1913); Underwriters at Lloyd's of London v. North American van Lines, 890 F.2d 1112, 1129 (10th Cir. 1989) (citing all 11 U.S. Circuits holding that state and common law claims are preempted by Carmack).

## CARMACK BURDEN OF PROOF

In order to establish a compensable claim against Mayflower for cargo loss or damage arising out of your clients' interstate move, it is their obligation to meet the following well established, prima facie criteria:

1. Items were tendered to the carrier in good condition at origin;
2. Items were delivered by the carrier in a damaged condition, or not delivered at all;
3. A specified amount of damages for each item.

Failure to establish any one of these requirements will bar recovery. See Missouri Pacific Ry. v. Elmore & Stahl, 375 U.S. 811 (1963).

Accordingly, Carmack and your clients' ability to meet their Carmack burden of proof, control whether or not your clients are entitled to compensation for reported damages to their interstate shipment.

## RESIDENTIAL PROPERTY DAMAGE AT ORIGIN AND DESTINATION RESIDENCES

Your letter makes reference to damaged walls in your clients' new residence in New York as well as wall scratches at their former residence in the District of Columbia.

Residential property damage which is alleged to have occurred during the loading or unloading of household goods is not part of or covered by the tariff released rate value protection afforded your clients under their Bill of Lading. Accordingly, any residential property damage claims must be addressed by the party directly responsible for the damage and their insurance carrier, if any. If, in fact, there is wall damage to the

Washington, D.C. and New York residences, your clients need to contact Maria
Kennedy at Moholland to address those issues and to file a claim with Moholland's
insurance company.

## MAYFLOWER CANNOT REFUND INTERSTATE
## TARIFF TRANSPORTATION CHARGES

Your October 5, 2004 letter demands a reversal of any and all transportation
charges incurred by your clients as a result of their interstate relocation. This demand is
made despite the facts your clients have failed to pay any of the charges to date. Under
interstate motor carrier law, a carrier (such as Mayflower) has an unequivocal duty to
collect, and interstate shippers (such as your clients) have an absolute duty to pay, all
applicable tariff charges for services provided. See 49 U.S.C. §§ 13701, 13702, 13706,
13707 and 14903. The applicable federal law makes it illegal for a carrier to accept
less, or an interstate shipper to pay less, than the full applicable tariff charges for
interstate transportation services. See 49 U.S.C. §§ 14902 and 14903. The purpose of
this law is to prevent carriers from making special pricing arrangements with favored
customers, thus discriminating against other customers.

Mayflower is required to collect the full applicable tariff charges from your clients
for their interstate move, **regardless of cargo loss or damage which may have
occurred to their shipment.** Title 49 U.S.C. §§ 13702, 13706 and 13707 authorize
Mayflower to set the amount and terms of transportation charges in its published tariffs
that are approved by the Surface Transportation Board of the Department of
Transportation (formerly the Interstate Commerce Commission). The Bill of Lading,
which forms the contract for carriage, specifically incorporates Mayflower's tariff
provisions into the contract. Consequently, all interstate tariff transportation charges
must be paid as a matter of federal law. This is the case, regardless of any claim for
loss or damage which might be alleged by an interstate shipper. In fact, the law is well
settled that **a shipper cannot attempt to offset or refuse to pay lawfully owed
transportation charges because of claims or potential claims for cargo loss or
damage.** See Chicago Northwestern Railroad Co. v. Lindell, 281 U.S. 14 (1930).

Mayflower is specifically prohibited from providing transportation services at any
rate other than the published tariff rate. See 49 U.S.C. § 13702 (a). A shipper's
ignorance of the correct tariff rate is irrelevant and is no defense to a claim by an
interstate carrier against the shipper to collect tariff charges. Aero Trucking, Inc. v.
Regal Tube Co., 594 F.2d 619, 621 (7th Cir.1979); Maislin Industries, Inc. v. Primary
Steel, Inc., 497 U.S. 116, 126 (1990); Keogh v. Chicago & N.W.R. Co., 260 U.S. 156,
163 (1992).

The United States Supreme Court has held, without exception, that a carrier
subject to the Interstate Commerce Act, must collect, and shippers must pay, all lawful
tariff charges set forth in applicable tariffs, and that a carrier's tariffs have the full force
and effect of federal law. Louisville & Nashville R.R. v. Maxwell, 237 U.S. 94 (1915);

Southern Pacific Trans. Co. v. Commercial Metals Co., 456 U.S. 336 (1982); Maislin (supra). A long series of judicial decisions finding shippers liable for tariff transportation charges, regardless of contract or equitable defenses, has become known as the "filed rate doctrine". The filed rate doctrine is so absolute that a claim for relief from the filed rate cannot even be predicated on a carrier's alleged *fraudulent or intentional misquotation* of rates. Consolidated Freightways Corp. v. Terry Tuck, Inc., 612 F.2d 465 (9th Cir 1980.), cert denied, 447 U.S. 907 (1980); Thurston Motor Lines, Inc. v. Rand, 460 U.S. 533 (1983).


Both the shipper and the carrier are presumed to know the law and to have understood that the tariff rate charged could lawfully be the only charge fixed by law. The rights of the shipper and carrier cannot be varied or enlarged by either contract or tort of the carrier. White v. United Van Lines, Inc., 758 F.Supp 1240 (N.D. Ill. 1991).

In sum, refusal to pay the published tariff transportation charges is in direct violation of federal law. In addition, payment in full by your clients of the transportation charges is a condition precedent to Mayflower paying a claim for alleged loss or damage. Therefore, Mayflower must proceed to comply with its statutory and tariff obligations to collect all outstanding transportation charges. Mayflower cannot agree to a refund or reversal of your clients' transportation charges.

Mayflower's records reflect that the total transportation charges due for your clients' interstate relocation are $25,032.70. None of these charges have been paid to date. Under federal law, Mayflower must proceed to collect those charges, in their entirety, regardless of any claim for cargo loss and damage your clients may assert. Accordingly, your clients should immediately forward their payment, in the amount referenced above made payable to "Mayflower Transit, LLC".

### Carmack Requires a Proper Written Claim be Filed
### Within Nine (9) Months from the Date of Delivery

Carmack, applicable federal regulations, Mayflower's interstate Bill of Lading and Mayflower's operating tariffs incorporated therein by reference, all require that a claim for loss, damage or delay be timely filed in writing and received by the carrier (Mayflower) within nine months from the date that the shipment was delivered. (See 49 U.S.C. §14706 (e)). Timely filing of a proper written claim is a condition precedent to recovery upon such claims.

In Pathways Bellows, Inc. v. Blanchette, 630 F2d 900 (2d Cir. 1980) cert. denied, 450 U.S. 915 (1981) the Second Circuit Court of Appeals held that the plaintiff's claim was untimely when it was received **just one day** beyond the nine month claim filing period, even though the carrier had actual knowledge of the damage and had issued an inspection report on the damaged goods.

Any attempt your clients may make to assert that they are not aware of the nine-month claim filing limitation has no merit. Under the applicable federal law, your clients,

as shippers, are charged with notice of Mayflower's published tariffs and, in particular, the tariff time limitation provisions. Federal courts have repeatedly found that a shipper is presumed to have constructive knowledge of the entire contents of the carrier's tariffs, including the nine-month limitation. See White c. United Van Lines, Inc., 758 F.Supp 1240 (N.D.Ill. 1991); Aero Trucking Inc. v. Regal Tube Company, 594 F.2d 619, 621 (7th Cir. 1979) and Harrah v. Minnesota Mining and Mfg. Co., 809 F.Supp. 313 (D.N.J. 1992). Furthermore, Section 6 on the back of Mayflower's interstate Bill of Lading clearly states that a claim must be submitted, in writing, within nine (9) months of date of delivery as a condition precedent to any recovery from Mayflower.

According to federal regulations controlling the claims handling process, a Shipper must submit a "proper claim" that complies with the following minimum filing requirements:

    (1)    written communication;
    (2)    containing facts sufficient to identify the baggage or shipment or property involved;
    (3)    asserting liability for alleged loss, damage, injury or delay and
    (4)    making claim for the payment of a specified or determinable amount of money

See 49 C.F.R. § 370.3 (b). If a claim fails to meet all of these requirements, it will not be paid. See also Delphax Systems v. Mayflower Transit, 54 F.Supp. 2d 60 (1st Cir. 1999).

The shipment in question was delivered on August 30, 2004. Accordingly, your clients have nine (9) months from that date, or until May 30, 2005, in which to timely file a proper written claim. To date, Mayflower has not received a valid claim from your clients for the following reasons:

None of your or your clients' correspondence previously sent to Mayflower or its disclosed household goods agent, (Moholland) meets the minimum claim-filing requirements set forth above for the following reasons:

- An undated facsimile from your clients sent to Maria Kennedy at Moholland, containing repair estimates from Oxford Restoration, LLC, fails to make a demand for a specific or determinable amount of money.
- Your October 5, 2004 letter addressed to Joe Moholland fails to make a demand for a specific or determinable amount of money.

Accordingly, to date, your clients have not filed a proper written claim with Mayflower. Until such time as they do, no further activity can be taken with regards to their alleged cargo damage. To assist in filing a proper claim however, I have enclosed several Presentation of Claim for Loss or Damage forms for your clients' use. Please

have your clients follow the instructions on the claims forms in order to file their claim with Mayflower and begin the adjusting process.

<u>CONCLUSION</u>

Mayflower cannot agree to a reversal or refund of your clients' transportation charges and must proceed to collect the unpaid charges from your clients. Upon receipt of a proper written claim, which meets the requirements outlined above, Mayflower will then adjust your clients' claim in accordance with applicable federal statutory, regulatory and tariff requirements. If warranted, a settlement offer will then be made to your clients, but their transportation charges must be paid in full before any cargo claim can be finalized.

With respect to any potential claim for residential property damage to the residences in either the District of Columbia or New York, your clients need to follow up directly with Moholland Moving, as the company who transported their shipment, and proceed to have that damage addressed by Moholland and their insurer.

I trust that the foregoing fully responds to your October 5, 2004 correspondence addressed to Joe Moholland. Please contact the undersigned if you have any questions. My direct dial is 636-305-6926.

Very truly yours,

Eric K. Eickmeyer
Staff Attorney

#40368
cc:    Maria Kennedy