UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAYFLOWER TRANSIT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 1: 05 CV 01558 |
| ) | |
| JEFFREY GOLDSTEIN and ) | Judge: Royce C. Lamberth |
| NANCY GOLDSTEIN ) | |
| ) | Deck Type: General Civil |
| Defendants and ) | |
| Third-Party Plaintiffs, ) | Date Stamp: 08/02/2005 |
| v. ) | |
| ) | |
| MOHOLLAND MOVING COMPANY, ) | |
| ) | |
| Third-Party Defendant. ) | |

**PLAINTIFF AND THIRD-PARTY DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO DISMISS ALL OF DEFENDANTS' <u>COUNTERCLAIMS AND THIRD-PARTY CAUSES OF ACTION</u>**

COMES NOW Plaintiff/Counter-Defendant Mayflower Transit, LLC (hereinafter referred to as "Mayflower") and Third-Party Defendant Moholland Moving Company (hereinafter referred to as "Moholland") by and through Counsel and for their Memorandum of Law in Support of their Motion to Dismiss all of Defendants' Counterclaims and Third-Party Causes of Action for Failure to State a Claim Upon Which Relief Can Be Granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure state as follows:

**I. <u>SUMMARY OF ARGUMENT</u>**

Plaintiff/Counter-Defendant Mayflower is an interstate motor carrier of household goods authorized by the United States Department of Transportation's Federal Motor Carrier Safety Administration to transport household goods in interstate commerce pursuant to the provisions of the Interstate Commerce Commission Termination Act. On August 27, 2004, Defendants/Counter-Plaintiffs Jeffrey and Nancy Goldstein (hereinafter referred to as "The Goldsteins") requested that Mayflower transport certain household goods from their residence at

1

4701 Linnaen Avenue in Washington, D.C. to 107 East 73rd Street in New York, New York. On August 30, 2004, Mayflower's disclosed household goods agent Moholland delivered the Goldsteins' property to 107 East 73rd Street in New York City, pursuant to a Mayflower Uniform Household Goods Bill of Lading and Freight Bill Contract No. 333-06472-4. Despite due demand, the Goldsteins have failed to remit payment for $25,032.70 in interstate freight charges due and owing. Mayflower has sued the Goldsteins for $25,032.70 in unpaid interstate tariff charges under the Bill of Lading and Freight Bill Contract. Mayflower has also sued for declaratory judgment that Mayflower has no liability to the Goldsteins for any alleged loss and/or damage to their property under the Bill of Lading and Freight Bill Contract No. 333-06472-4.

The Goldsteins have now made Counterclaims against Mayflower, which they have also brought as Third-Party Causes of Action against Mayflower's disclosed household goods agent Moholland. The Goldsteins claim damages in an amount greater than $75,000.

Mayflower and Moholland now file this Motion to Dismiss, and assert that the interstate transportation service that Mayflower provided the Goldsteins is specifically governed by 49 U.S.C. §14706, the Carmack Amendment to the Interstate Commerce Act (hereafter "Carmack"), which preempts all of the Goldsteins' Counterclaims. Because the Goldsteins' Counterclaims are all based on state law and are preempted by Carmack, they should all be dismissed. All of the Goldsteins' Third-Party Causes of Action against Moholland should also be dismissed because under 49 U.S.C. §13907, a disclosed household goods agent (Mulholland) has no liability separate or apart from that of its principal carrier.

Plaintiff/Counter-Defendant Mayflower moves to dismiss Defendant/Counter-Plaintiffs' First, Second, and Third Counterclaims and First, Second, and Third Third-Party Causes of Action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. These Counterclaims and Causes of Action should all be dismissed with prejudice.

## II.  ARGUMENT IN SUPPORT OF MAYFLOWER'S MOTION TO DISMISS

### A.  Legal Standard for Motion to Dismiss

A Motion to Dismiss should not be granted unless Counter-Plaintiff can prove no set of facts in support of its claim entitling it to relief.  See *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  When considering a Motion to Dismiss, the Court must accept all the Counter-Plaintiffs' allegations as true.  See *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974).  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a Complaint need only be a "short and plain statement of the claim," and, as long as the pleadings "give [Counter-] Defendant fair notice of what [Counter-] Plaintiffs' claim is and the grounds upon which it rests," the notice pleading has been satisfied.  See *Conley v. Gibson*, 355 U.S. at 47.

### B. Defendants/Counter-Plaintiffs' Third-Party Causes of Action Against Moholland Are All Barred Because Moholland is a Disclosed Household Goods Agent for Mayflower

As a matter of law, Moholland, as the disclosed agent for Mayflower, cannot be held liable for any action for damages arising out of interstate carriage, and performance of transportation services under an interstate bill of lading.  The disclosed principal carrier, Mayflower, is the only party which can be held liable statutorily for damages to interstate shipments or pre-move or post-move claims handling.  See 49 U.S.C. 13907 and 49 U.S.C. 14706; see also *Rehm and Meuser v. The Baltimore Storage Co. and Mayflower Transit, LLC*, 300 F. Supp. 2d 408, 417 (W.D. Va. 2004) (dismissing disclosed agent of Mayflower because agent's actions were within the actual or apparent authority of the principal under 49 U.S.C. 13907); and *Parramore v. Tru-Pak Moving Systems, Inc.*, 286 F. Supp. 2d 643, 649 (M.D.N.C. 2003) (dismissing agent of Atlas Van Lines because agents of disclosed principal are not liable for damages arising under 49 U.S.C. 13907(a), are relieved of liability, and are not parties to the bill of lading as a matter of law); see also *Nichols v. Mayflower Transit, Inc.*, 368 F. Supp. 2d 1104 (D. Nev. 2003).

It is clear from the Goldsteins' Third-Party Causes of Action that they have not alleged any claims against Moholland separate and apart from Moholland's capacity as a disclosed

household goods agent for Mayflower and Mayflower's transportation of the Goldsteins' household goods from Washington, D.C. to New York City.  Indeed, the Goldsteins' have consolidated their Counterclaims and the Third-Party Causes of Action by simply adding the words "…and Third-Party Cause of Action" to the heading above each of their Counterclaims.

Section 13907 of Title 49 of the Interstate Commerce Commission Termination Act provides as follows:

> "**Carrier is Responsible for Agent –** Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services [including accessorial or terminal services] and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier."

The Goldsteins' Complaint fails to establish liability on the part of Defendant Moholland for damages independent from its role as the disclosed household goods agent for Mayflower, and thus Counter-Plaintiffs have failed to state a claim for relief.  See *Valkenburg, K.G. v. SS Henry Denney,* 295 F.2d 330, 333 (7th Cir. 1961) (holding a disclosed agent not liable to shipper separate and apart from the interstate carrier); *U.S. v. Diez,* 428 F. Supp. 1028, 1029-1030 (E.D.La. 1977).  See also *O'Connell v. Noyes & Sons,* 2000 WL 712850 (D.Me. 2000); *Werner v. Mayflower Transit, Inc.*, 52 F. Supp. 2d 567 (E.D.N.C. 1998), citing *Atlantic & Gulf Stevedore, Inc. v. Revelle Shipping Agency, Inc.,* 474 F.2d 1060, 1063 (5th Cir. 1973); *Fox v. Kachina Moving & Storage,* 1998 WL 760268 (W.D.Tx. 1998); and *Prince v. United Van Lines, Inc.*, 1997 WL 53121 (N.D.Tx. 1997); see also *Nichols v. Mayflower Transit Inc.*, 368 F. Supp. 2d 1104 (D. Nev. 2003); *Marks v. Suddath Relocation Systems, Inc.*, 319 F. Supp. 2d 746 (S.D. Tex. 2004).

Moholland, as a disclosed household goods agent of Mayflower and not a party to the contract of carriage, cannot be held liable for damage arising out of the contract of carriage.  See

*Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 860 (2nd Cir. 1985) ("When an agent makes a contract for a disclosed principal, it becomes neither a party to the contract nor liable for the performance of the contract.")

Since liability for loss or damage to household goods moving through interstate commerce is placed on an interstate carrier by statute, Moholland, as a disclosed household goods agent, has no liability separate and apart from that of the interstate carrier, Mayflower, and should be properly dismissed with prejudice from Counter-Plaintiffs' claims.

### C. The Carmack Amendment Preempts All Common Law and State Law Claims Against a Carrier of Goods in Interstate Commerce

In 1906, Congress enacted the Carmack Amendment so as to create a national policy regarding an interstate carrier's liability for property loss. See *New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1953).

Since its enactment, the Carmack Amendment has been found to have fully occupied the field of interstate carrier liability for loss or damage to goods:

> "Almost every detail of the subject is covered so completely that there could be no rational doubt that Congress intended to take possession of this subject, and supersede all state regulation with reference to it..."

See *Adams Express Co. v. Croninger,* 33 S.Ct. 148, 151-52 (1913).

Federal Circuit Courts of Appeal throughout the country have held that the Carmack Amendment preempts state law and common law claim remedies for cargo damaged in interstate shipment. See *Shao v. Link, Cargo (Taiwan) Limited*, 986 F.2d 700, 706-707 (4th Cir. 1993). This is a uniform holding throughout the country. Wright, George, Slouching Toward a Morass: The Case for Preserving Complete Carmack Preemption, 1 DePaul Business & Comm. L.J. 177-213 (2003); See *W.D. Lawson & Co. v. Penn Central Co.*, 456 F. 2d 419, 421 (6th Cir. 1972) ("As to the ... issues ... [of] whether or not the Carmack Amendment preempted common law courts ... we hold that it did."); *Hughes Aircraft Co. v. North American Van Lines, Inc.,* 970 F. 2d

5

609, 613 (9th Cir. 1992) ("It is clear that the Carmack Amendment established a uniform national policy for interstate carriers which preempts any state common law action against [a carrier] acting solely as a common carrier."); *Underwriters of Lloyd's of London v. North American Van Lines,* 890 F.2d 1112, 1113 (10th Cir. 1989) ("[The Carmack Amendment preempts state common law remedies against a carrier for negligent loss or damage to goods shipped under a proper bill of lading."); *Hughes v. United Van Lines, Inc.*, 829 F. 2d 1407, 1413 (7th Cir. 1987) *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed. 2d, 248 (1988) ("We ... hold that the remedy provision of the Carmack Amendment preempts all state and common law remedies inconsistent with the Interstate Commerce Act."); *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F. 2d 1261, 1264 (8th Cir. 1984) ("All action against a common carrier, whether designed as a tort or contract actions are governed by the federal statute ..."); *Air Products and Chemicals, Inc. v. Illinois Central Gulf Freight Corp. Railroad Co.,* 721 F.2d 483, 486 (5th Cir. 1983) ("Congress intended by the Carmack Amendment to provide a uniform national remedy against carriers from breach of contract of carriage, including liability for default in any common law duty as a common carrier."); *Cleveland v. Beltman North American Co., Inc.*, 30 F.3d 373 (2nd Cir. 1994) (stating that "one of the primary purposes of the Carmack Amendment is to provide uniformity in the disposition of claims brought under a bill of lading.").

      A landslide of federal district court decisions have rejected similar attempts by shippers to sidestep Carmack preemption by asserting state statutory and common law causes of action. See *Rehm et al. v. The Baltimore Storage Co. et al*., 300 F. Supp. 2d 408, 414 (W.D. Va. 2004) (Carmack preempts state regulation of the claims process through state statutory consumer protection law); *Pierre v. United Parcel Service, Inc.,* 774 F. Supp. 1149, 1151 (N.D.Ill. 1991) (claim for pre-move fraud preempted); *Pietro Culotta Grapes, Ltd. v. Southern Pacific Transp. Co.,* 917 F. Supp. 713 (E.D. Cal. 1996) (Carmack preempts claims arising from pre-shipment conduct); *United Van Lines v. Homburger,* 932 F. Supp. 139 (W.D.N.C. 1996); *United Van Lines v. Zak,* 861 F. Supp. 61 (S.D. Ill. 1994); *Werner v. Lawrence Trans.,* 52 F. Supp. 2d 567, 569 (E.D.N.C. 1998); *Taylor v. Mayflower Transit, Inc.,* 22 F. Supp. 2d 509 (W.D.N.C. 1998); *Strike*

*v. Atlas Van Lines, Inc.,* 102 F. Supp. 2d 599 (M.D.Pa. 2000); *Malone v. Mayflower Transit, Inc.,* 819 F. Supp. 724 (E.D. Tenn. 1993) (Carmack Amendment preempts Tennessee state common law actions); *Suarez v. United Van Lines, Inc.,* 791 F. Supp. 815, 817 (D.Colo. 1992) (state deceptive practices statute conflicts with Carmack); *Hanlon v. UPS,* 132 F. Supp. 2d 503 (N.D.Tex. 2001); *United Van Lines, Inc. v. Shooster,* 860 F. Supp. 826, 829 (S.D.Fla. 1992); *American Eye Way Inc. v. Roadway Package System, Inc.,* 875 F. Supp. 820 (S.D. Fla. 1995); *White v. United Van Lines, Inc.,* 758 F. Supp. 1240 (N.D.Ill. 1991); *Landess v. North American Van Lines, Inc.,* 977 F. Supp. 1274 (E.D.Tex. 1997); *Nowakowski v. American Red Ball Transit Co.,* 680 N.E.2d 441 (Ill. App. 2d Dist. 1997); *Tayloe v. Kachina,* 16 F. Supp. 2d 1123 (D.Ariz.1998).

Accordingly, the Carmack Amendment provides the exclusive remedy for an action for damages against the delivering carrier. The only means of recovery for Counter-Plaintiffs is under the Carmack Amendment.

### D. <u>Plaintiff's Common Law and/or State Law Claims are Preempted by Federal Law</u>

In their First Counterclaim and First Third-Party Cause of Action, the Goldsteins allege fraud, recklessness, negligence, detrimental reliance, and deceptive trade practices. In their Second Counterclaim and Second Third-Party Cause of Action, they allege negligence. In their Third Counterclaim and Third Third-Party Cause of Action, the Goldsteins allege breach of contract.

For recovery under Carmack, a Counter-Plaintiff *must* plead and prove: (1) receipt of goods by the carrier in good order and condition; (2) that the shipment arrived at its destination in a damaged condition or did not arrive at all; and (3) the amount of damages. *See Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 84 S.Ct. 1142 (1964). Instead of pleading under Carmack, the Goldsteins allege a litany of state-law claims.

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. 14706 (formerly 49 U.S.C. 11707), exclusively governs the rights, duties, and liabilities of the parties (shipper and

carrier) to the interstate shipment of household goods.  The Carmack Amendment states in pertinent part:

> "A carrier providing transportation or service subject to jurisdiction under ... [49 U.S.C. 13501 or 13531] [governing motor carriers] ... shall issue a receipt or bill of lading for the property received for transportation under this part.  That carrier, and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction ... [49 U.S.C. 13501] ... are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property caused by (a) the receiving carrier; (b) the delivering carrier; or (c) another carrier over whose line or who the property is transported in the United States ..."  See 49 U.S.C. 14706(a)(1).

In *Shao v. Link Cargo (Taiwan) Limited,* 986 F.2d 700 (4th Cir. 1993), the United States Court of Appeals for the Fourth Circuit concluded that the Carmack Amendment preempted the Plaintiffs' state law claims.  In *Shao*, certain personal property was to be shipped from Taiwan to Baltimore, but the property was inadvertently sent to a warehouse in Miami, Florida, where it was destroyed by fire.  See 986 F.2d at 701.  The plaintiff brought a claim, *inter alia,* for breach of contract and negligence against several parties involved in the interstate shipment.  After a detailed discussion of the Carmack Amendment and its broad preemptive effect, the Court concluded that the Amendment preempted the Plaintiffs' common law breach of contract and negligence claims stating:

> "Today we ... conclude that the Carmack Amendment was intended by Congress to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in a shipment.  Allowing a shipper to bring common law breach of contract or negligence claims against a carrier for such loss or damage conflicts with this policy.  We therefore agree that if the Interstate Commerce Commission had jurisdiction over their shipment in this case, [Plaintiffs'], common law claims are preempted by the Carmack Amendment.  See *Shao*, 986 F.2d at 706-707.

The Tenth Circuit, in adopting Carmack preemption, reversed a verdict for the Plaintiff and overruled its prior decisions and held that:

> "Having reconsidered the history and judicial interpretations of the statute we now hold that the Carmack Amendment preempts state common law remedies against common carriers for negligence, loss, or damage to goods shipped under a lawful bill of lading." *Underwriters at Lloyd's of London v. North American Van Lines,* 890 F.2d, 1112, 1121 (10th Cir. 1989).

Because it is comprehensive, the Carmack Amendment preempts all state and common law theories, such as negligence and breach of bailment, that are asserted against a carrier for damage to goods shipped under a proper bill of lading. *Ash et al. v. Artpack International, Inc. et al. v. North American Van Lines*, 1998 U.S. Dist. LEXIS 3520 (S.D.N.Y. March 23, 1998) *citing Cleveland v. Beltman North American Co.,* 30 F.3d 373, 378 (2d Cir. 1994). The Goldsteins' Counterclaims should therefore be dismissed with prejudice.

**i. Defendants/Counter-Plaintiffs' First Counterclaim for Fraud, Recklessness, Negligence, Detrimental Reliance, and Deceptive Trade Practices is Preempted and Should be Dismissed**

The Goldsteins' First Counterclaim alleges fraud, recklessness, negligence, detrimental reliance, and deceptive trade practices. Despite the long list of essentially state-law claims, Defendants/Counter-Plaintiffs have not alleged any conduct on the part of Mayflower which is separate and distinct from the delivery of, or alleged loss of, or alleged damage to the goods. Separate and distinct activities must exist for Plaintiff's claim to fall outside the preemptive scope of Carmack. See *Smith v. United Parcel Service*, 296 F.3d 1244, 1249 (11th Cir. 2002).

The Goldsteins' First Counterclaim does not rise to an independent claim separate and distinct from the contract of carriage. See *Shao v. Link Cargo (Taiwan) Limited*, 986 F.2d 700, 706 (4th Cir. 1993). The Goldsteins claim that Mayflower acted in a fraudulent, reckless, and negligent manner by failing to take proper precautions to protect their goods while transporting them. The activity of taking precautions to protect goods while in transit is inextricably involved with the delivery of the goods. It is not separate and distinct from the delivery of, or alleged loss

9

of, or damage to the goods.  Precautions taken during the delivery of goods is squarely within the preemptive scope of Carmack.  Such activities are quintessentially related to the loss of, or damage to the goods, and are precisely within the scope of activities governed by Carmack.  The federal transportation law scheme would be entirely disrupted were such questions as arranging for the interstate transportation of goods newly subjected to state-by-state regulation.  To allow Plaintiff's state law claims to move forward not only flies in the face of Carmack's uniform application requirements, but would make every Plaintiff's cause of action different and dependent on which states were involved in the move.  Anything other than complete preemption of Plaintiff's state law claims is contrary to the very purpose of the Carmack Amendment.  *Nichols v. Mayflower Transit, LLC*, 368 F.Supp. 2d 1104, 1108 (D. Nev., 2003).  See also *Wright, George, Slouching Toward a Morass: The Case for Preserving Complete Carmack Preemption*, 1 DePaul Business & Comm. L.J. 177-213 (2003).

       The Goldsteins further claim that Mayflower deceptively misrepresented the training and supervision of the personnel involved with the move, and that the Goldsteins relied on these alleged misrepresentations to their detriment.  The Interstate Commerce Commission Termination Act of 1995 (ICCTA, Public Law No. 104-88, 109 Stat. 803 (1995)) is one of the most comprehensive legislative and regulatory schemes that Congress has ever enacted.  Carmack supplants all other rules of obligation with respect to interstate shipments.  See *Thurston Motor Lines, Inc. v. Jordan K. Rand Ltd.*, 460 U.S. 533, 535 (1983); see also *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 777-778 (5th Cir. 2003) (stating that "…Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier.")  ICCTA defines regulated "transportation" to mean not only the actual physical movement of property, but all carrier services related to the movement.  These services include, but are not limited to, *arranging for*, receipt, delivery, storage, transfer, handling, packing, unpacking, and interchange of the party.  See 49 U.S.C. 13102(19) (emphasis added).  Defendants/Counter-Plaintiffs' claims concerning alleged misrepresentation in the arranging for movement of their property are therefore squarely within the definition of "transportation" regulated comprehensively and

therefore exclusively by federal law. All of the essentially state-law claims in Defendants/Counter-Plaintiffs First Counterclaim should be dismissed because they are preempted.

### ii. Defendants/Counter-Plaintiffs' Second Counterclaim for Negligence is Preempted and Should be Dismissed

Defendants/Counter-Plaintiffs' Second Counterclaim alleges negligence in the handling of the Goldsteins' goods. The Goldsteins' claim for negligence does not rise to an independent claim separate and distinct from the contract of carriage. See *Shao v. Link Cargo (Taiwan) Limited*, 986 F.2d 700, 706 (4th Cir. 1993). Separate and distinct activities must exist for Plaintiff's claim to fall outside the preemptive scope of Carmack. See *Smith v. United Parcel Service*, 296 F.3d 1244, 1249.

ICCTA further provides that a state may not enact or enforce any law relating to a motor carrier's price, route, or service with respect to the interstate transportation of property. See 49 U.S.C. 14501(c). ICCTA's expansive definition of regulated "transportation" and its express preemption of state law with respect to any carrier "service" clearly reflect the supremacy of federal law over state law in the area of interstate transportation. See Mastercraft Interiors, Ltd. v. ABF Freight Systems, Inc., 2003 WL 22207286 (D.Md. September 17, 2003); Deerskin Trading Post, Inc. v. United Parcel Service of Am. Inc.*,* 972 F. Supp. 665, 668 (N.D.Ga. 1997). Defendants/Counter-Plaintiffs' Second Counterclaim for negligence is a state law claim in the area of interstate transportation that is unquestionably preempted and should therefore be dismissed. See *Underwriters at Lloyds of London v. NAVL*, 890 F. 2d 1112 (10th Cir. 1989).

### iii. Defendants/Counter-Plaintiffs' Third Counterclaim for Breach of Contract is Preempted and Should be Dismissed

The Goldsteins allege breach of contract in their Third Counterclaim. The Carmack Amendment does not permit a shipper to plead breach of contract however he or she wants, or under a variety of theories that are in essence state common law claims. See *Margetson v. United Van Lines, Inc.*, 785 F.Supp. 917, 922 (D. NM 1991). In *Margetson*, the Plaintiff moved

from Dallas to Santa Fe, New Mexico and claimed that prior to the move the carrier represented to her that her possessions would be appropriately cared for, moved and stored. Plaintiff later sued alleging theories of fraud, breach of contract, and under New Mexico's Unfair Practices Act, *Id.* at 918. The Court dismissed all of Plaintiffs' claims as preempted by federal law:

> "The Court recognizes the Supreme Court in the Tenth Circuit precedent clearly establish an interstate shipper's sole remedy against the common carrier for damages to goods as found in the Carmack Amendment." *Id.* at 919.

### E. Any Claims By Counter-Plaintiffs for Punitive Damages, Consequential Damages, Attorney's Fees, Costs and Interests are Preempted

The Carmack Amendment's basic tenet is that any liability imposed is for "actual loss or injury to the property caused by the carrier." 49 U.S.C. 14706(a)(1). The carrier is not responsible for special or consequential damages. See *Contempo Metal Furniture of California v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981). In addition, Defendants/Counter-Plaintiffs are not entitled to punitive damages. See *Nichols v. Mayflower Transit Inc.*, 368 F. Supp. 2d 1104 (D. Nev. 2003).

The plain language of the Carmack Amendment limits recovery for loss or damage to "actual loss or injury to the property" and excludes any provision for private punitive damages. 49 U.S.C. §14706. *Lakeshore, et al. v. Prentice,* 147 U.S. 101 (1892); *Cleveland v. Beltman North American Co.,* 30 F.3d 373 (2nd Cir. 1994); *Chandler v. Aero Mayflower Transit Co.,* 374 F.2d 129, 137 (4th Cir. 1967); *W.A. Stackpole Motor Transport, Inc. v. Malden Spinning and Dying Co.,* 263 F.2d 47 (1st Cir. 1968); *Missouri Pacific R.R. Company v. H. Rouw Company,* 258 F.2d 445 (5th Cir. 1958); *Rockholt v. United Van Lines, Inc.,* 697 F. Supp. 383, 389 (D.Ida. 1988); *Margetson v. United Van Lines, Inc.,* 785 F. Supp. at 921; see also *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 382-383 (holding that the Carmack Amendment preempts any federal common law remedy that increases the carrier's liability beyond the actual loss or injury to the property unless the shipper alleges injuries separate and apart from those resulting directly from the loss of the shipped property and that federal common law claims for

punitive damages and compensatory damages for lost wages and emotional suffering were preempted).

The Carmack Amendment's "actual loss" liability standard enables both interstate carriers and shippers to assess their risks and carriers to predict their potential liability for damages. *A.T. Clayton & Co. v. Missouri-Kansas-Texas R.R.,* 901 F.2d 833, 835 (10th Cir. 1990); *Hughes v. United Van Lines, Inc.,* 829 F.2d at 1415; *Suarez v. United Van Lines, Inc.,* 791 F. Supp. at 816.

Carmack's objectives of uniform carrier rates and liability will be defeated if the federal and state courts throughout the United States are free to assess tort-based punitive damages or statutory "additional" damages against interstate carriers on non-Carmack causes of action. Such a practice will inexorably lead to carrier liability being determined by local views of public policy.

In *Cleveland v. Beltman North American Co.,* 30 F.3d 373, (2nd Cir. 1994), cert. denied, 115 S.Ct. 901 (1995) the Second Circuit reversed the District Court's aware of $50,000 in punitive damages to the plaintiffs and held that Carmack's "actual loss" liability standard governs a carrier's liability to the exclusion of any federal common law theory of liability and punitive damages. The *Cleveland* panel wrote:

> "As amply evidenced by the verdict in this case, punitive damage awards could have a dramatic impact on a carrier's liability and seriously enlarge a shipper's remedy. A claim for breach of the implied covenant of good faith and fair dealing resulting in an award of punitive damages could well thwart one of the primary purposes of the Carmack Amendment; that is, to provide some uniformity in the disposition of claims brought under a bill of lading [citations omitted]." 30 F.3d at 379.

The primary purpose of the Carmack Amendment was to codify a uniform system of carrier liability to both the shipper and the carrier by enabling the carrier to assess its risks and its potential liability for damages. See *Air Products and Chemicals, Inc. v. Illinois Central Gulf*

13

*Railroad Co.,* 721 F.2d 483, 486 (5th Cir. 1983); *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1413 (7th Cir. 1987).

Furthermore, to the extent that Plaintiff seeks attorney's fees, these too are not recoverable under Carmack. The rule consistently applied is that, in the absence of contractual or statutory liability therefore, attorney's fees and related expenses, i.e. costs, are not recoverable as an element of damages. Neither the uniform bill of lading nor the Carmack Amendment contains such a provision and Courts have continually held that such fees are not recoverable under the Carmack Amendment. See *Atlantic C.L.R. Co. v. Riverside Mills*, 219 U.S. 186, 55 L.Ed. 167, 31 S.Ct. 164 (1911); *Moffit v. Bekins Moving and Storage,* 818 F.Supp. 178 (N.D. TX 1993) *aff'd* 6 F.3d 305 (5th Cir. 1993). See also *Accura Systems, Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874 (5th Cir. 1996). Claims for anything other than actual damages undermine federal law. All claims for attorney's fees and punitive damages in Plaintiffs' Counterclaim should be dismissed with prejudice.

## IV.  CONCLUSION

Mayflower and Moholland accordingly request that this Court dismiss with prejudice all of Defendants/Counter-Plaintiffs' Counterclaims and Third-Party Causes of Action. The Court should dismiss the Third-Party Causes of Action against Moholland because all such claims against disclosed agents are barred by Federal law. Defendants/Counter-Plaintiffs' Counterclaims are not only preempted by Federal law in the form of the Carmack Amendment but also at odds with the national transportation policies established by the Carmack Amendment. Finally, Mayflower and Moholland request that this Court dismiss all claims by Defendants/Counter-Plaintiffs for attorney's fees and punitive damages.

        Respectfully submitted,

        <u>/s/John T. Husk</u>
        John T. Husk, Esq.
        D.C. Bar No. 434714
        Seaton & Husk, L.P.
        2240 Gallows Road
        Vienna, VA 22182
        Tel: 703-573-0700; Fax: 703-573-9786

        Douglas H. Wood, Esq.
        D.C. Bar No. 481262
        Seaton & Husk, L.P.
        2240 Gallows Road
        Vienna, VA 22182
        Tel: 703-573-0700; Fax: 703-573-9786

        *Counsel for Mayflower Transit LLC*
        *and Moholland Moving Company*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing PLAINTIFF AND THIRD-PARTY DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO DISMISS ALL OF DEFENDANT'S COUNTERCLAIMS AND THIRD-PARTY CAUSES OF ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO RULE 12(b)(6) has been served via U.S. Mail on the following parties on this 7th day of December, 2005.

      Paul R. Taskier
      D.C. Bar No. 367713
      Dickstein Shapiro Morin & Oshinsky LLP
      2101 L Street, NW
      Washington, DC 20037
      Telephone: 202-785-9700

      Anthony P. Coles
      Patterson Belknap Webb & Tyler, LLP
      1136 Avenue of the Americas
      New York, NY 10036
      Telephone: 212-336-2130

      /s/ John T. Husk